**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**SHARAD TAK,**

**Plaintiff,**

**v.** **CIVIL ACTION NO. 2:21-cv-93**

**JITENDRA VYAS**

**SERVE:** **5162 38th Street N.**
**Arlington, VA 22207**

**and**

**SUNDEEP DAMANI** **JURY DEMANDED**

**SERVE:** **898 Centrillion Dr.**
**McLean, VA 22102**

**and**

**STREAM LLC**

**SERVE:** **Sundeep Damani (Registered Agent)**
**898 Centrillion Dr.**
**McLean, VA 22102**

**and**

**FOXHALL VENTURES, LLC**

**SERVE:** **Jitendra Vyas (Registered Agent)**
**5162 38th Street N.**
**Arlington, VA 22207**

**Defendants.**

## COMPLAINT

NOW COMES Plaintiff Sharad Tak, by counsel, and for his complaint against Defendants Jitendra Vyas, Sundeep Damani, Stream LLC, and Foxhall Ventures, LLC, states as follows:

## NATURE OF THE ACTION

1. In 1999, Plaintiff Sharad Tak ("Plaintiff") and Defendants Jitendra Vyas and Sundeep Damani (collectively the "Individual Defendants") formed Technology Ventures, LLC ("Technology Ventures" or "the Company"), a Virginia limited liability company that places IT software consultants and provides related services. On or about the time of its formation, the Plaintiff and the Individual Defendants entered into the Operating Agreement of Technology Ventures, LLC (hereinafter "the Operating Agreement"). The Operating Agreement sets forth the terms by which Technology Ventures is to function, and allocates the Parties' respective ownership interests. In the past several years, the Individual Defendants started to make decisions for the Company without Plaintiff's knowledge and/or input. The Individual Defendants' unilateral and impermissible decisions benefited themselves to the detriment of Plaintiff, and violated the Operating Agreement. Specifically, the Individual Defendants breached the Operating Agreement by withholding and/or failing to make proper distributions to Plaintiff, consistent with his 45.5% ownership interest; by depriving Plaintiff of the opportunity to receive notice of and participate in manager meetings and manager decisions; and by paying themselves unauthorized "consulting fees" in unreasonable amounts through Stream LLC and Foxhall Ventures (collectively, the "Business Defendants"), for unspecified services, further preventing the payment of the distributions to which Plaintiff is entitled.

## PARTIES, JURISDICTION AND VENUE

2. Plaintiff Sharad Tak is an individual who resides in the State of Florida.

3. Sharad Tak is the Chief Executive Officer and Chairman of the Board of Managers for Technology Ventures.

4. Sharad Tak is one of three sole member managers of Technology Ventures and has a 45.5% ownership interest in the Company.

5. Defendant Jitendra Vyas ("Vyas") is a resident of Virginia.

6. Vyas is the President of Technology Ventures.

7. Vyas is the second of three sole member managers of Technology Ventures and has a 30% ownership interest in the Company.

8. Foxhall Ventures, LLC is/was a Virginia limited liability company owned and operated by Vyas.

9. Defendant Sundeep Damani is a resident of the Commonwealth of Virginia.

10. Damani is the Chief Operating Officer for Technology Ventures.

11. Damani is the third of three sole member managers of Technology Ventures and has a 24.5% ownership interest in the Company.

12. Defendant Stream LLC is Virginia limited liability company owned and operated by Damani.

13. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

15. Plaintiff and the Individual Defendants created Technology Ventures, LLC, and on March 1, 1999, each signed the Operating Agreement. *See* **Exhibit 1**.

16. Technology Ventures is a Virginia limited liability company with a principal place of business in Virginia. It provides IT consulting and related services.

17. Since its inception, Plaintiff and the Individual Defendants have served as the Company's sole Members and Managers, as defined by the Operating Agreement. *See* Ex. 1 §§ 3.1.1, 4.2.2(a). The rights and obligations of each Member and Manager are set forth in the Operating Agreement.

18. Plaintiff was named the Company's original Chairman of the Board of Managers and the Chief Executive Officer. *See* Ex. 1 §§ 4.2.3(b), 4.3.1(b). Plaintiff still holds those positions, in name.

19. Management of the Company's day to day activities is supposed to be conducted by the Board of Managers—Plaintiff and the Individual Defendants—by meeting and vote, weighted consistent with their respective ownership interest. *See* Ex. 1 § 4.2.4(a). Each Manager is entitled to advance notice of any meeting of the Board of Managers. *See* Ex. 1 § 4.2.4(c). Any management decisions made in absence of a meeting require each Manager receive notice of the decisions within ten (10) days of the decision. *See* Ex. 1 § 4.2.4(e).

20. The Board of Managers is also supposed to set salaries for Company officers. *See* Ex. 1 § 4.3.10.

21. Similarly, for each fiscal year, the Board of Managers is to meet and determine net cash flow available for distribution to the Members. *See* Ex. 1 § 6.1. Distributions are to be paid pro rata, based on each Member's ownership interest. *See id.*

22. Plaintiff remains a 45.5% owner in Technology Ventures and its CEO and Board Chair. The Individual Defendants both serve as Company officers. For some period of time the

Individual Defendants have also been heavily compensated as "consultants" for Technology Ventures through their respective limited liability companies.

23. In the past several years, the Individual Defendants began circumventing the terms of the Operating Agreement and making decisions on behalf of the Company for their individual benefit, without proper notice to Plaintiff and without Plaintiff's knowledge, input and/or approvals.

24. In the last five years, Plaintiff has been given notice of, and attended, only two Board of Managers meetings, one in 2017 and one in 2020. No Board of Managers meetings were held in 2018 and 2019; the meeting in 2020 was only held because Plaintiff insisted on it.

25. Plaintiff has not been given any formal written notice by the Individual Defendants that any other meetings of the Board of Managers were called, as is required by the Operating Agreement. Similarly, Plaintiff has never been given any notice of decisions being made in absence of a formal meeting of the Board of Managers, as is required by the Operating Agreement. It is clear, however, that over the past several years, Defendants have made a number of decisions, ostensibly for the Company, without Plaintiff's knowledge, and which benefitted them at Plaintiff's expense.

26. The Individual Defendants' unilateral decisions have included paying themselves ever-increasing salaries—by and through their respectively owned entities, Foxhall Ventures, LLC (Vyas) and Stream LLC (Damani)—for unspecified work as "consultants" to the Company, in violation of the provisions of the Operating Agreement. *See* Exh. 1, §4.2.9. In the past two (2) years, Individual Defendants paid themselves annual "consulting fees" of $750,000 each, an amount far in excess of the prevailing competitive rates for the Individual Defendants' positions and undefined duties. Neither the Individual Defendants nor the Business Defendants have

written consulting agreements with Technology Ventures that set forth their duties, obligations and compensation. It further appears that in 2020, the Individual Defendants paid their respective entities the entire annual consulting fee in the first 60-90 days of the calendar year, before whatever services were fully performed.

27. Specifically, without Board vote or Plaintiff's agreement, within the last five years the Individual Defendants have unilaterally paid themselves, through the Business Defendants, the following identical amounts:

2015 – $569,625 each;

2016 – $626,587 each;

2017 – $689,246 each;

2018- $750,000 each;

2019- $750,000 each; and

2020 - $750,000 each.

28. Since the Company's inception, Plaintiff has also been excluded from meetings and discussions about Member distributions and has received only two (2) annual distributions of $100,000.

29. Plaintiff also has learned that the Individual Defendants invested Company funds in two start-up businesses, Binary Fountain and iPlace, without Plaintiff's knowledge or consent.

**COUNT I: BREACH OF SECTION 4.2.4 OF THE OPERATING AGREEMENT**
**(Against the Individual Defendants)**

30. The foregoing allegations are hereby adopted and incorporated, as if fully re-alleged herein.

31. The Operating Agreement is a valid, binding, and enforceable contract between the parties, governed by Virginia law. *See* Ex. 1 § 1.3.

32. Pursuant to Section 4.2.4 of the Operating Agreement, all Managers are entitled to advanced notice of any meeting of the Board of Managers and the right to participate in those meetings.

33. Save two meetings in 2017 and 2020, Plaintiff has never been given notice of any Board of Member meetings called by the Individual Defendants. As such, any meetings called and held, without Plaintiff's knowledge were conducted in violation of the Operating Agreement; and any actions taken at those meetings are void.

34. Further, and pursuant to Section 4.2.4(e) of the Operating Agreement, although any decision required to be made at a Board of Managers meeting may be made in the absence of a formal meeting, under certain circumstance, each Member must be given written notice, within ten (10) days of any such decision.

35. Plaintiff has never been provided written notice of any decisions Individual Defendants made in the absence of a formal Board of Managers meeting, in violation of the Operating Agreement.

36. Setting Company officer salaries is a decision within the sole authority of the Board of Managers. *See* Ex. 1 § 4.3.10. Individual Defendants annual payments to their respective entities for consulting services constitute the payment of officer salaries, which requires Board of Managers' approval.

37. However, the decisions on the Individual Defendants' consulting fees have been unilaterally made by themselves, without Board approval and/or Plaintiff's consent, in violation of the Operating Agreement. In paying themselves exorbitant annual fees—under the guise of "consulting fees" by and through the Business Defendants—the Individual Defendants have limited, and often prevented, member distributions to Plaintiff.

38. Furthermore, in violation of Section 4.2.6(a)(iv), the Individual Defendants invested Company funds in two businesses, Binary Fountain and iPlace, without Plaintiff's knowledge and obtaining the written consent of all Members.

39. Additionally, in violation of Section 4.2.6(a)(iv), the Individual Defendants purportedly hired the Business Defendants to perform unspecified services for the Company without obtaining the written consent of all members.

40. Section 4.2.9 of the Operating Agreement provides that any transaction involving a person or entity with whom a Manager is affiliated must be approved by the Board of Managers, and any contract with such person or entity shall not be in excess of prevailing competitive rates for similar transactions.

41. The Individual Defendants, without Board of Managers' approval, have retained their own entities as "consultants," and are paying them far in excess of prevailing competitive rates, in violation of Section 4.2.9 of the Operating Agreement.

42. Moreover, in 2020, the Business Defendants received their entire annual fees within the year's first ninety (90) calendar days, notwithstanding they had not yet earned all those fees, and the negative effects full payment inflicted on the Company's finances.

43. As a result of the Individual Defendants' breaches of Section 4 of the Operating Agreement, and diversion of Company funds, Plaintiff has been harmed in an amount not less than $3,000,000.

**COUNT II: BREACH OF SECTION 6.1 OF THE OPERATING AGREEMENT**
**(Against the Individual Defendants)**

44. The foregoing allegations are hereby adopted and incorporated, as if fully re-alleged herein.

45. The Operating Agreement is a valid, binding, and enforceable contract between the parties, governed by Virginia law. *See* Ex. 1 § 1.3.

46. Pursuant to Section 6.1 of the Operating Agreement, the Board of Managers is to determine the amount to be reserved for Company operations and the amount to be distributed to the Members, for each fiscal year.

47. To date, despite being a Manager and CEO, Plaintiff has never been given notice of or the opportunity to participate in a Manager meetings regarding this topic, in violation of the Operating Agreement.

48. Further, Plaintiff has only been paid minimal distributions in two out of the last twenty years, in further violation of the Operating Agreement.

49. As a result of the Individual Defendants' breaches of the Operating Agreement, and unauthorized payments to themselves, Plaintiff has been harmed in an amount not less than $3,000,000.

## **COUNT III: DECLARATORY JUDGMENT & PERMANENT INJUNCTION**
**(Against All Defendants)**

50. The foregoing allegations are hereby adopted and incorporated, as if fully re-alleged herein.

51. The Operating Agreement is a valid, binding, and enforceable contract between the parties, governed by Virginia law. *See* Ex. 1 § 1.3.

52. Plaintiff has suffered substantial harm as a result of the Individual Defendants' multiple breaches of the Operating Agreement and will continue to suffer harm from Defendants' ongoing failures to comply with the terms of the Operating Agreement.

53. Plaintiff alleges a substantial and actual controversy within the jurisdiction of this Court to declare the rights of the Parties under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57.

54. The forgoing allegations reflect controversies over the rights and obligations of the Parties under the Operating Agreement.

55. These controversies are of sufficient immediacy to warrant the issuance of a declaratory judgment and permanent injunction, which will clarify and settle the legal issues between the parties, order the Business Defendants to refund the unauthorized, excessive payments they received since 2016, and enjoin the Individual Defendants from future violations of the Operating Agreement, including unauthorized payments to themselves and/or their entities.

WHEREFORE, Plaintiff Sharad Tak respectfully requests this Court enter judgment against Defendants in an amount of not less than $3,000,000 for damages sustained by Plaintiff as a result of the Individual Defendants' breaches of the Operating Agreement; grant Plaintiff declaratory and permanent injunctive relief in the form of an order requiring the Individual Defendants' compliance with the Operating Agreement and the return of all unauthorized payments to the Business Defendants; and award Plaintiff his costs and attorneys' fees incurred herein.

Plaintiff demands trial by jury on all claims and counts for which jury trial is authorized.

Respectfully submitted,

SHARAD TAK

By Counsel

/s/ *Robert W. McFarland*

Robert W. McFarland (VSB No. 24021)
Micaylee A. Noreen (VSB No. 92433)
MCGUIREWOODS LLP
101 West Main Street, Suite 9000
Norfolk, Virginia 23510
Telephone: (757) 640-3700
Facsimile: (757) 640-3701
rmcfarland@mcguirewoods.com
mnoreen@mcguirewoods.com

*Counsel for Plaintiff Sharad Tak*